Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| SAN CARLOS MORTGAGE, LLC<br>Apelada<br><br><br>v.<br><br><br>SARAH SOTO PÉREZ<br>Apelante | KLAN202400764 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Aguadilla<br><br>Caso Núm. AG2021CV00042<br><br>Sobre: Ejecución de Hipoteca y Cobro de Dinero |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Grana Martínez y el Juez Adames Soto

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de enero de 2025.

Comparece la Sra. Sarah Soto Pérez (señora Soto Pérez o parte apelante), mediante recurso de *Apelación*, donde nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla, (TPI), el 3 de julio de 2024. En el contexto de una acción de cobro y ejecución de hipoteca, el foro apelado declaró *Ha Lugar* la moción de sentencia sumaria presentada por el acreedor, San Carlos Mortgage, LLC. (San Carlos Mortgage o parte apelada), por lo que ordenó a la señora Soto Pérez-deudora, el pago de lo debido.

Entre los asuntos dilucidados en la *Sentencia* apelada fue determinado que la apelante no estaba cobijada por el proceso de mediación compulsoria que ordena la Ley Núm. 184-2012, *infra,* pues el inmueble dado en garantía hipotecaria no es su residencia principal.

Como explicaremos, la aplicación o no de la referida ley al caso ante nosotros comporta resolver un asunto de carácter jurisdiccional que prima

sobre cualquier otro planteado. Adelantamos que, evaluados los asuntos ante nuestra consideración, resolvemos *Revocar*.

## I. Resumen de tracto procesal

El 15 de enero de 2021 Oriental Bank, acreedor original, presentó una *Demanda* sobre Ejecución de Hipoteca y Cobro de Dinero contra la señora Soto Pérez. En síntesis, alegó ser el tenedor de un pagaré garantizado mediante la constitución de una hipoteca voluntaria sobre una finca de la cual la parte apelante era titular. Alegó que la señora Soto Pérez no había cumplido con la forma y términos de los pagos convenidos en dicho instrumento, por lo que declaró vencida la totalidad de la deuda. En consecuencia, solicitó al Tribunal que ordenara a la parte apelante el pago de $77,151.23, por el balance del principal del referido pagaré, los intereses del 6.25% devengados anualmente sobre dicha suma desde el 1 de enero de 2020, y los que se devengaran hasta su total y completo pago.

El 18 de febrero de 2021 compareció la parte apelante por derecho propio mediante *Moción de Referido a Mediación Compulsoria,* solicitando que se refiriera el caso a mediación compulsoria. Adujo que tal referido era un requisito jurisdiccional en los procesos de ejecución de hipoteca garantizada por una vivienda principal, conforme a la Ley Núm. 184-2012, según enmendada, *infra.*

Por lo cual, el 24 de febrero de 2021, el tribunal *a quo* emitió una *Orden* refiriendo el caso al Centro de Mediación de Conflictos (CMC) para que este señalara una vista de mediación.

Luego, el 26 de marzo de 2021, la parte apelada presentó ante el TPI una *Solicitud de Mediación,* peticionando que la referida vista fuera celebrada por videoconferencia.

En atención a ello, el 6 de abril de 2021, el foro primario emitió una *Orden* refiriendo el caso al CMC para la celebración de la vista de mediación, el 20 de abril de 2021, en modalidad remota.

Celebrada la mediación, el 5 de agosto de 2021, el CMC presentó una *Notificación al Tribunal en Casos de Ejecución de Hipoteca Mediante Videoconferencia.* En lo pertinente, manifestó que ambas partes habían asistido mediante videoconferencia a la sesión obligatoria de mediación. Además, indicó que el acreedor hipotecario no le brindó al deudor la orientación requerida por la Ley Núm. 184-2012, según enmendada, *infra*, y que el proceso culminó por *desistimiento.* Relativo al referido desistimiento, informó que este ocurrió debido a que una de las partes dio por terminada su participación antes de completar la mediación.[1]

Posteriormente, el 12 de agosto de 2021, Oriental Bank presentó una *Solicitud de Sentencia Sumaria.* En virtud de esta, adujo que el proceso de mediación concluyó debido a que la parte apelante desistió del proceso. Además, sostuvo que no existían controversias sobre los hechos materiales y pertinentes a la causa de acción presentada, por lo cual, solicitó que se dictara sentencia sumaria, declarándose con lugar la *Demanda* instada.

A raíz de ello, el 20 de septiembre de 2021, la señora Soto Pérez presentó *Moción Urgente Solicitando Producción de Documentos para Oposición a Moción de Sentencia Sumaria,* la cual acompañó con tres cartas fechadas el 29 de abril de 2021, 12 de mayo de 2021 y 17 de junio de 2021, y dirigidas al abogado de la parte demandante. En estas, le requirió a dicha parte la producción de varios documentos, incluyendo el historial completo de pagos de la hipoteca en controversia. A tenor, la señora Soto Pérez le solicitó al TPI que ordenara a la parte apelada la producción de la prueba documental aludida. También, solicitó una prórroga de veinte (20) días para oponerse a la solicitud de sentencia sumaria, contados desde que Oriental Bank le entregara los aludidos documentos.

Seguido, el 20 de septiembre de 2021, el TPI le concedió a la señora Soto Pérez una prórroga de veinte (20) días para oponerse a la *Solicitud de*

---

[1] La aludida *Notificación al Tribunal en Casos de Ejecución de Hipoteca Mediante Videoconferencia* **no** indicó cuál de las partes *desistió.*

*sentencia sumaria,* según esta lo había solicitado. Sin embargo, denegó otra petición de la apelante para que el término para instar oposición a sentencia sumaria comenzara a transcurrir desde que Oriental Bank le entregara unos documentos solicitados.

El 22 de septiembre de 2021 Oriental Bank presentó una *Moción Informativa,* afirmando haber enviado a la peticionaria los documentos requeridos.

Entonces, a pesar de no haber transcurrido la prórroga concedida a la señora Soto Pérez para oponerse a la solicitud de sentencia sumaria, el 28 de septiembre de 2021,[2] el TPI emitió *Sentencia,* declarando *Ha Lugar* la *Moción de Sentencia Sumaria* presentada por Oriental Bank.

En desacuerdo, el 14 de octubre de 2021, la señora Soto Pérez presentó una *Moción solicitando reconsideración de sentencia,* donde alegó que Oriental Bank no había cumplido con enviarle la totalidad de los documentos solicitados, y que algunos de los sometidos eran ilegibles. Además, sostuvo que el historial de pago que recibió por parte del apelado estaba incompleto, por lo que estaba imposibilitada de establecer que pagó en exceso de los $11,860.00 y, a su vez, negar que la deuda era líquida, vencida y exigible. Ante ello, solicitó que el Tribunal: reconsiderara la referida *Sentencia;* ordenara la producción de los documentos o, en la alternativa; refiriera el caso nuevamente a mediación.

El 17 de octubre de 2021, el TPI declaró *No Ha Lugar* la *Moción solicitando reconsideración de sentencia.*[3]

Aún en desacuerdo, el 29 de octubre de 2021, la señora Soto Pérez instó ante este Tribunal de Apelaciones un recurso de *Apelación,* al que se identificó con el alfanumérico KLAN202100862. Esta argumentó que el TPI se había equivocado al dictar sentencia sumariamente, sin antes tomar en consideración su *Solicitud de descubrimiento de prueba.* En particular,

---

[2] Notificada el 29 de septiembre de 2021.
[3] Notificada el 18 de octubre de 2021.

planteó que los documentos solicitados eran necesarios para la vista de mediación, y para oponerse a la moción de sentencia sumaria presentada por Oriental Bank.

Como resultado, el 11 de enero de 2022, este foro intermedio revocó la *Sentencia* dictada de manera sumaria. En síntesis, resolvimos que: (1) Oriental Bank no cumplió con el requisito de buena fe durante el proceso de mediación, y; (2) no había transcurrido el término para que la señora Soto Pérez presentara su postura en cuanto a la solicitud de sentencia sumaria. A tenor, ordenamos la devolución del caso al CMC para que el proceso continuara, así como el envío de los documentos solicitados por la parte apelante, incluyendo una copia legible de la escritura de hipoteca y del pagaré, además de la información completa sobre el historial de pagos.

En cumplimiento con lo ordenado, el TPI refirió el caso al CMC el 11 de abril de 2022.[4]

A los dos días, el 13 de abril de 2022, Oriental Bank presentó una *Solicitud de Sustitución de Parte Demandante.* Así, peticionó ser sustituido como acreedor por la entidad jurídica San Carlos Mortgage, que es la parte apelada ante nosotros.

El 19 de abril de 2022, el TPI autorizó la sustitución de parte en los términos propuestos.

En esa misma fecha la parte apelante presentó una *Moción Solicitando Orden Inmediata Para Descubrir Lo Solicitado,* aduciendo que la parte apelada había incumplido con lo ordenado por el Tribunal de Apelaciones.

Como resultado, el 19 de abril de 2022,[4] el TPI le ordenó al recurrido enviar los referidos documentos, en un término de diez (10) días.

Después, el 5 de mayo de 2022, la señora Soto Pérez presentó una *Moción Solicitando Desestimación de la Demanda.* Allí argumentó que el apelado había incumplido con la orden del Tribunal de Apelaciones, y la del

---

[4] Notificada el 20 de abril de 2022.

propio TPI, referente a los documentos que debía descubrir, por lo que procedía la desestimación de la causa presentada en su contra.

Como respuesta, el 9 de mayo de 2022, el TPI emitió *Orden* requiriéndole a la parte apelada que mostrara causa por la cual no debía imponerle una sanción de seiscientos dólares, al haber incumplido con la *Orden* de 19 de abril de 2022.

Así las cosas, el 18 de mayo de 2022, la parte apelada presentó *Moción en Cumplimiento de Orden*. En esencia, manifestó que le envió a la señora Soto Pérez la escritura de hipoteca y el pagaré hipotecario de forma digital. Además, acompañó una declaración jurada donde hizo constar que el historial de pago en su poder comenzaba desde el 2010, pero el historial de pagos desde el 2003, fecha en que se originó el préstamo, hasta el 2009, no se encontraba en sus récords. En ese sentido, arguyó que la deuda se originó en enero del 2020, por consiguiente, el historial de pagos de 2003 al 2010 no era pertinente para el caso.

No obstante, el 19 de mayo de 2022, el TPI le ordenó al apelado a entregar toda la prueba solicitada por la peticionaria como parte del descubrimiento de prueba. Además, le instruyó a que, de tener objeción con alguna de la documentación solicitada, debía dar cumplimiento a la Regla 34 de Procedimiento Civil, 32 LPRA Ap. V, R. 34.

Por su parte, el 26 de mayo de 2022, el apelado presentó *Moción en Cumplimiento de Orden.* En lo pertinente, aseveró haber entregado toda la información solicitada y disponible.

En respuesta, el 27 de mayo de 2022, el TPI reiteró su *Orden* para que fuera celebrada la vista de mediación, según señalada para el 2 de junio de 2022, y fijó una vista transaccional para el 4 de agosto de 2022.

A pesar de esto, el 31 de mayo de 2022, la señora Soto Pérez presentó *Moción Solicitando Reconsideración de Orden, Regla 47, Reglas de Procedimiento Civil, 2009,* aduciendo que no estaba preparada para la vista de mediación señalada, al no haberse cumplido con el descubrimiento de

prueba ordenado, según lo había dispuesto el Tribunal de Apelaciones mediante *Sentencia.* El mismo día, la parte apelante también presentó *Moción Solicitando Desestimación de la Demanda sin Oposición,* donde esgrimió que había transcurrido veinte días de haber presentado la *Moción Solicitando Desestimación* sin que la parte recurrida se opusiera, por tanto, procedía el remedio solicitado.

El 1 de junio de 2022, el TPI declaró *No Ha Lugar* las mociones mencionadas en el párrafo que precede.

Insatisfecha, el 27 de junio de 2024, la señora Soto Pérez presentó otro recurso de *certiorari,* KLCE202200672, ante este foro intermedio.

Como resultado, el 19 de agosto de 2022, emitimos una *Sentencia* en la cual, en lo pertinente, determinamos que incidió el TPI al manifestar que sería la mediadora quien determinaría los documentos pertinentes para celebrar la vista de mediación, pues ya este Tribunal de Apelaciones había establecido en el caso KLAN202100862, que el historial de pagos de la señora Soto Pérez se le debía entregar por completo *antes* de la celebración de la vista de mediación. A su vez, ordenamos por segunda ocasión que la parte apelada entregara el historial de pago en su totalidad a la parte apelante para que, una vez cumplido, se pautara la celebración de la vista de mediación compulsoria.

Por lo cual, el 14 de julio de 2023, el TPI señaló vista de seguimiento para el 28 de septiembre de 2023, y le concedió a las partes hasta el 15 de agosto de 2023 para descubrir toda la prueba.

El 11 de agosto de 2023, la señora Soto Pérez solicitó al tribunal *a quo* que desestimara la *Demanda,* afirmando que la parte apelada no había cumplido con el descubrimiento de prueba que le fue ordenado.

Luego, el 7 de septiembre de 2023, el CMC presentó ante el TPI una *Moción en Cumplimiento de Orden.* En lo que concierne, allí manifestó que las partes habían comparecido a la vista de mediación compulsoria pautada para el 16 de agosto de 2023, pero no se pudo celebrar, porque la parte

apelada había presentado una solicitud de prórroga al foro primario para que se le permitiera entregar los documentos solicitados por la apelante. Además, la señora Soto Pérez también informó que tenía pendiente una moción. Ante lo cual, la vista de mediación fue reseñalada para el 18 de septiembre de 2023.

Sin embargo, el 15 de septiembre de 2023, San Carlos Mortgage presentó una *Moción Informando Retiro del Proceso de Mediación y en Oposición a Desestimación por Academicidad.* Adujo que, mientras realizaba la búsqueda del historial de pago, advino en conocimiento de que la propiedad en controversia no era la residencia principal de la señora Soto Pérez. Sobre esto último, añadió que la apelante había informado desde su primera comparecencia que su dirección postal ubicaba en San Juan, Puerto Rico, no en el inmueble cuya acreencia era objeto del pleito. En apoyo a tal contención, anejó una declaración jurada suscrita por un emplazador, de la cual presuntamente surgía que la señora Soto Pérez no residía en dicha propiedad, sino su hermano. Por lo tanto, alegó que, no siendo dicho inmueble la residencia principal de la señora Soto Pérez, tampoco le asistía el derecho a una mediación compulsoria, ni esta era acreedora de las determinaciones del Tribunal de Apelaciones en cuanto a la producción del historial de pagos, por lo que se retiraba del proceso de mediación.

Ante lo cual, el 16 de septiembre de 2023, el TPI emitió una *Resolución* concediéndole a la señora Soto Pérez un término de quince días para replicar.

A los pocos días, el 19 de septiembre de 2023, el CMC informó al Tribunal que la señora Sarah Soto Pérez no había comparecido a la cita de mediación pautada, y que daba por finalizado dicho proceso *por el desistimiento de la parte demandante*, aquí apelada.

Al próximo día, el 20 de septiembre de 2023, la señora Soto Pérez compareció ante el TPI mediante una *Moción Solicitando Término para Replicar a Moción Informando Retiro del proceso de Mediación y en Oposición a Desestimación por Academicidad.*

El foro primario declaró *No Ha Lugar* la referida solicitud de prórroga instada por la apelante.

En horas de la mañana del 28 de septiembre de 2023 fue celebrada una vista virtual sobre el estado de los procedimientos, en la cual, según fue recogido en la *Minuta* a esos fines levantada, compareció la representación legal de la parte apelada, mas no así la señora Soto Pérez. Luego el Tribunal hizo referencia a la moción instada por San Carlos Mortgage donde dicha parte afirmó que *luego de un estudio realizado resultaba que no era la propiedad principal sino un "second home", por lo cual no cualificaba para cualquier ayuda que pudiera brindarse*. En la misma *Minuta* se hizo constar que la representación legal de San Carlos Mortgage *aclaró* que la parte demandada no residía en el referido inmueble, y en todo momento ha puesto una dirección en San Juan, donde fue emplazada, viviendo allí su hermano. Que por tal razón tuvo que retirarse de la mediación. Sobre la información que no había entregado a la parte apelante, afirmó que se trataba de evidencia extraviada, no existía, y por ello no se había sometido.

Visto lo descrito, el foro apelado manifestó que "ante las circunstancias que se ha desglosado en la moción y para el registro no sería una de estas propiedades que cualificaran para el proceso. La parte tampoco ha cumplido con entregar la documentación que se le ha requerido en muchas ocasiones". Finalmente, el tribunal *a quo* le concedió quince días a la parte apelada para que presentara una moción dispositiva, y daría término a la señora Soto Pérez para que expusiera su posición, momento en el cual resolvería los asuntos.

El mismo 28 de septiembre de 2023, pero en la tarde, la señora Soto Pérez presentó *Moción sobre Mediación y Solicitando Desestimación de la Demanda*. La parte apelante le planteó al Tribunal, en resumen, lo siguiente: (1) que en la mañana tuvo una confusión, pues se trató de comunicar con el CMC, pero allí le dijeron que ya no tenían el caso, por lo que presentó esta moción, según fue orientada; (2) justificó su incomparecencia a la vista de

mediación de 18 de septiembre de 2023, e indicó los pasos que siguió para continuar con dicho proceso, pues no era su intención retirarse del mismo; (3) afirmó no haber recibido aún la documentación que se le ordenó a San Carlos Mortgage que produjera, contrario a lo ordenado por el Tribunal; (4) con relación a la imputación de que el inmueble no era su residencia principal aseveró que cuando se retirara su intención era la de vivir en su residencia principal, que es el inmueble objeto del pleito, la cual visitaba algunos fines de semana; que vivía alquilada en San Juan con su hijo por motivos de trabajo; que no tenía otra residencia, sino la del pleito; que tenía escritura de Hogar Seguro referente al inmueble objeto de la demanda; que su hermano necesitaba un sitio donde vivir y por eso le permitió quedarse en los bajos de dicha propiedad. Terminó esgrimiendo el requisito jurisdiccional de mediación compulsoria, que, a su juicio, no se había cumplido.

Respecto a la moción que precede, el 2 de octubre de 2023, el TPI emitió una *Resolución* disponiendo *Nada que proveer*.

Entonces, el 12 de octubre de 2023, San Carlos Mortgage presentó una *Moción Solicitando que se Dicte Sentencia Sumaria.* En esta incluyó un tracto procesal, la discusión de Derecho que juzgó pertinente, y entonces enumeró una serie de hechos que, adujo, no estaban en controversia, proveyendo prueba documental para establecerlos. En general, afirmó que no estaba en controversia que la señora Soto Pérez incumplió con su obligación de pagar el préstamo hipotecario referente al inmueble ofrecido en garantía, cuya descripción registral incluyó, siendo San Carlos Mortgage el legítimo tenedor del pagaré que evidenciaba dicha acreencia y las garantías que la aseguraban, junto a las cantidades específicas adeudadas. En el último hecho identificado como incontrovertido afirmó que la propiedad objeto de ejecución no constituía la residencia principal de la demandada, por lo que resultaba inaplicable el proceso de mediación compulsorio dispuesto por la Ley Núm. 184-2012, *infra*. Para establecer este último hecho, aludió a la

declaración jurada del emplazador que había previamente presentado a tales fines en la moción donde anunció que se estaba retirando del proceso de mediación, según constaba en el expediente del Tribunal. Como remedio, solicitó que se ordenara la ejecución de la propiedad en controversia.

En respuesta, el 27 de noviembre de 2023, la señora Soto Pérez presentó *Moción en Oposición a Moción de Sentencia Sumaria y Solicitando Desestimación de la Demanda*. En esta: reiteró su postura de que constituía la ley del caso aquella que ordenó a la parte apelada producir ciertos documentos antes de que se celebrara la vista de mediación; aseveró que el acreedor-apelado no contaba con evidencia suficiente para probar la deuda reclamada con exactitud; que el apelado no había procedido de buena fe; se reiteró en lo afirmado en su *Moción sobre mediación y solicitando desestimación de la demanda*; para mostrar que el inmueble era su residencia principal, incluyó como prueba documental copia del *Acta para anotar derecho a hogar seguro*. Por lo tanto, solicitó que el TPI declarara *No Ha Lugar* la petición de sentencia sumaria y que desestimara la *Demanda*.

Es así como, el 12 de julio de 2024, el foro de instancia emitió la *Sentencia* cuya revocación se nos solicita, acogiendo la solicitud de sentencia sumaria presentada por la parte apelada, ordenando a la señora Soto Pérez el pago de lo debido. Con referencia a la controversia sobre si en este caso resultaba de aplicación cumplir con el requisito jurisdiccional de celebrar un proceso de mediación compulsoria, respondió en la negativa, al concluir que la propiedad objeto de litigio no era la residencia principal, según definido por la Ley Núm. 184-2012, *infra*. Ancló tal determinación en las alegaciones levantadas por la señora Soto Pérez en su *Moción sobre Mediación y Solicitando Desestimación de la Demanda,* en la que *admitió* que su intención era vivir en la propiedad objeto del litigio, una vez se retirara; que utilizaba la propiedad objeto del litigio cuando visitaba el municipio de Moca, algunos fines de semana; que había vivido alquilada en San Juan por razón de su trabajo; que, al momento de presentar la moción, vivía en San Juan con su

hijo; y que su hermano no tenía un lugar dónde vivir, por lo que le permitió ocupar la parte baja de la propiedad. Por esto concluyó que las circunstancias descritas por la parte apelante apuntaban a que la propiedad objeto de ejecución no era su residencia o vivienda principal, según definido por la Ley Núm. 184-2012, *infra*, e interpretado por el Tribunal Supremo. Sobre lo mismo añadió que las mociones presentadas por la parte apelante hacían constar que su dirección era en la Urbanización University Gardens, en San Juan. De igual forma aseveró que la parte apelante no había ofrecido prueba de que utilizara dicha propiedad como su hogar, sino que circunscribió su planteamiento a que la propiedad era su única propiedad residencial y que sobre ella anotó su derecho a hogar seguro. En definitiva, concluyó que, no tratándose de la residencia principal de la señora Soto Pérez, era improcedente la celebración de la vista de mediación compulsoria que mandaba la Ley Núm. 184-2012, *infra*, y ello tornaba académicas las determinaciones del Tribunal de Apelaciones que ordenaban el descubrimiento sobre el historial de pago completo para llevar a cabo el proceso de mediación.

Insatisfecha, la señora Soto Pérez solicitó *Reconsideración*, sin embargo, fue declarada *No Ha Lugar*.

Es así como, la señora Soto Pérez acude ante nosotros, mediante recurso de *apelación,* señalando la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia, Sala de Aguadilla, como cuestión de hecho y de derecho al dictar Sentencia [122] declarando con lugar la Solicitud de Sentencia Sumaria [111] de San Carlos Mortgage, LLC sin considerar la Moción Solicitando Reconsideración de Sentencia [123] de Soto.

Por su parte, San Carlos Mortgage presentó *Alegato en oposición a recurso de apelación.*

Contando con los escritos de las partes, estamos en posición de resolver.

## II. Exposición de derecho

### A. Jurisdicción

La jurisdicción se ha definido como el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *Allied MGMT Group, v. Oriental Bank*, 204 DPR 374, 385 (2020); *Yumac Home v. Empresas Massó*, 194 DPR 96, 103 (2015); *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 233 (2014). Tanto los foros de instancia como los foros apelativos tienen el deber de, primeramente, analizar en todo caso si poseen jurisdicción para atender las controversias presentadas, puesto que los tribunales estamos llamados a ser fieles guardianes de nuestra jurisdicción, incluso cuando ninguna de las partes invoque tal defecto. *Horizon v. Jta. Revisora, RA Holdings*, supra, pág. 234; *Shell v. Srio. Hacienda*, 187 DPR 109, 122-123 (2012). Ello responde a que las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos. *Mun. San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *García v. Hormigonera Mayagüezana*, 172 DPR 1, 7 (2007).

### B. Ley de Mediación Compulsoria

*En el contexto del requisito jurisdiccional de la Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal, Ley Núm. 184 de 17 de agosto de 2012, 32 LPRA 2881 et seq. (Ley Núm. 184-2012), la celebración de una vista o un acto de mediación compulsorio **es un requisito jurisdiccional sin cuyo cumplimiento no se podrá dictar sentencia o celebrar la venta judicial**.* (Énfasis provisto). *Scotiabank v. SLG Rosario-Castro*, 205 DPR 537, 540 (2020). La referida ley se creó con el objetivo de proteger **la residencia principal** de un deudor hipotecario ante los efectos de la crisis económica en Puerto Rico, mediante la negociación con el acreedor hipotecario. (Énfasis provisto). *Bco. Santander v. Correa García*, 196 DPR 452, 461 (2016). Allí se define la mediación compulsoria como sigue:

> En los casos en que un acreedor hipotecario pueda iniciar un proceso de ejecución de hipoteca, o el cual pueda culminar en la venta judicial, **de una propiedad residencial que constituya una vivienda principal**, se celebrará una reunión compulsoria de mediación conducida en una sala o salón del Tribunal o en aquel lugar que las partes en acuerdo con el mediador seleccionen, pero que no podrá ser en las oficinas del acreedor hipotecario o de sus abogados o representantes legales o asesores, y presidida por un mediador seleccionado por las partes, en el curso de un procedimiento de ejecución de hipoteca sumario y/o ordinario. En dicha reunión el acreedor hipotecario notificará al deudor hipotecario todas las alternativas disponibles en el mercado para poder evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal. El propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal. (Énfasis provisto). Art. 2 de la Ley Núm. 184-2012, *supra*, sec. 2881 nota.

La Ley Núm. 184-2012, *supra*, le impone al tribunal el deber de ordenar la celebración de una vista de mediación como requisito jurisdiccional en los casos que un acreedor hipotecario solicite la ejecución **de una vivienda principal**. *Bco. Santander v. Correa García*, supra, pág. 472. Por lo tanto, *si el tribunal incumple con el requisito de ordenar la celebración de la vista de mediación, carecerá de jurisdicción para emitir sentencia y ordenar ventas judiciales. Oriental Bank v. Caballero García*, 212 DPR 671, 681 (2023). En *Franklin Credit v. George Riviello,* 209 DPR 555, 564-565 (2022), nuestro Tribunal Supremo llamó la atención a dos requisitos esenciales que impone dicho estatuto:

> De entrada, la propia Exposición de Motivos de la Ley Núm. 184-2012 describe la propiedad principal de vivienda como **"aquella que se usa como hogar principal, no (second home), y que para fines de contribuciones sobre bienes inmuebles es la primera residencia o aquella que gozaría de aplicar en cada caso de una exención contributiva"**.

> Cónsono con lo anterior, la Ley Núm. 184-2012, *supra*, define dos conceptos pertinentes para resolver la controversia ante nuestra consideración. Estos son: la mediación compulsoria y **la residencia o vivienda principal**. En cuanto al concepto mediación compulsoria, la Ley Núm. 184-2012 establece que, en los casos en que un acreedor pueda iniciar una demanda sobre ejecución de hipoteca "**de una propiedad residencial que constituya una vivienda principal**, se celebrará una reunión compulsoria de mediación". En particular, especifica que el acreedor hipotecario tiene el deber de notificarle al deudor hipotecario todas las alternativas disponibles en el mercado con el fin de "evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal". Así, la Ley Núm.

184-2012, *supra*, puntualiza que el objetivo de la mediación compulsoria es llegar a un acuerdo que permita al deudor hipotecario "establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y no perder su vivienda principal".

En cuanto al segundo concepto, la Ley Núm. 184-2012, *supra*, **define residencia o vivienda principal como "[a]quella que se utiliza como el hogar principal del deudor o del deudor y su familia inmediata; y que para fines contributivos sobre bienes inmuebles es aquella para la cual aplicaría la exención contributiva principal"**.

Al interpretar la Ley Núm. 184-2012, *supra*, este Tribunal ha establecido que la mediación compulsoria es un requisito jurisdiccional y, consecuentemente, si no se cumple con este requisito no podrá dictarse sentencia ni ordenarse la venta judicial de un inmueble que se utiliza como residencia principal. Es decir, **una propiedad residencial que constituya una vivienda personal del deudor**. Por ello, el tribunal tiene la obligación de referir el caso a mediación compulsoria en "todos los casos en los que se solicite la ejecución de un inmueble **que se utiliza como residencia principal**, salvo en aquellos casos en los que el deudor se encuentre en rebeldía o cuando el tribunal haya eliminado sus alegaciones". (Énfasis provisto, citas omitidas).

Recalca el mismo alto Foro que *todo lo advertido es indicativo de que la protección de la Ley Núm. 184-2012,* supra, *opera para salvaguardar la residencia principal o vivienda principal. Íd.*, pág. 566. Por ello el estatuto requiere que se realice un esfuerzo real **para evitar la ejecución de la vivienda principal del deudor**. (Énfasis provisto). *Scotiabank v. SLG Rosario-Castro*, 205 DPR 537, 559 (2020).

Por último, sobre lo que constituye una vivienda principal el Tribunal Supremo plasmó que: *el Legislador definió con claridad que la residencia o vivienda principal es aquella que se utiliza como el hogar principal del deudor y su familia. En otras palabras, la residencia o vivienda principal equivale a ese lugar preciado que usamos como techo, morada o guarida. Sin duda, toda disposición relacionada al propósito de la creación de la Ley Núm. 184-2012, supra, coincide con que el ánimo legislativo fue proteger el hogar del deudor o de este y su familia. Es decir, lo que se pretende lograr es salvar el hogar del deudor y su familia, ante el escenario en que está a punto de perder el techo en el que vive. De eso se trata la medida, pues la protección va dirigida a ejecutar la política pública de evitar que los deudores y sus familias pierdan su hogar. Franklin Credit v. George Riviello, supra,* págs. *567-568.*

### C. La Sentencia Sumaria

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1. La sentencia sumaria hace viable este objetivo al ser un mecanismo procesal que le permite al tribunal dictar sentencia sobre la totalidad de una reclamación, o cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, pág. 218.

Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare,* 202 DPR 281, 290 (2019); *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018).

Por el contrario, no es "aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión,* 178 DPR 200, 219 (2010).[5] Este mecanismo está disponible para la disposición de reclamaciones que contengan elementos subjetivos únicamente cuando no existan controversias de hechos esenciales y pertinentes. *Rodríguez García v. Universidad Albizu,* 200 DPR 929, 940 (2018), *Velázquez Ortiz v. Mun. de Humacao,* 197 DPR 656, 661 (2017).

El principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse

---

[5] Citando a *Soto v. Hotel Caribe Hilton,* 137 DPR 294 (1994).

para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013). Además, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005). Por ello, cuando exista la más mínima duda o controversia sobre hechos materiales o esenciales del caso, el tribunal denegará la sentencia sumaria y deberá celebrar un juicio en su fondo. Díaz Rivera V. Srio. de Hacienda, supra, pág. 27. Ello debe ser visto a la luz de que la mera existencia de "una controversia de hecho es suficiente para derrotar una moción de sentencia sumaria ... cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* supra, pág. 213.

Por otra parte, la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. *Meléndez González, et al. v. M. Cuebas*, 193 DPR 100, 111 (2015)*, SLG Zapata Rivera, v. J.F. Montalvo*, supra, pág. 432*.*

Como regla general, "para derrotar [o sostener] una solicitud de sentencia sumaria que la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión P.R., Inc.*, supra, pág. 215. Específicamente, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R.36.5, establece que: **"[l]as declaraciones juradas para sostener u oponerse** a la moción **se basarán en el conocimiento personal del (de la) declarante**. **Contendrán aquellos hechos que serían admisibles en evidencia** y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido". (Énfasis provisto). 32 LPRA Ap. V, R.36.5; *Roldán Flores v. M. Cuebas,* supra, en las págs. 677-678.

Con respecto a la interpretación de la anterior Regla, el Tribunal Supremo ha resuelto que "las declaraciones juradas que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, siendo, por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye". *Íd.*; *Ramos Pérez v. Univisión P.R., Inc.*, supra, pág. 216. Más allá de contener hechos específicos sobre los aspectos sustantivos del caso, la declaración debe incluir **"hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado"**. (Énfasis provisto). *Roldán Flores v. Cuebas*, supra, pág. 678.

### B. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra, pág. 115. Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro

Tribunal Supremo. *Roldán Flores v. Cuebas*, supra; *Meléndez González et al. v. M. Cuebas*, supra. A tenor, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra, pág. 114. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Íd.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

**III. Aplicación del Derecho a los hechos**

a.

Según lo revela el tracto procesal, estando el acreedor-apelado y la deudora-apelante en medio del proceso de mediación compulsoria que ordena la Ley Núm. 184-2012, *supra,* el 15 de septiembre de 2023, el primero de estos presentó una *Moción informando retiro del proceso de mediación y*

*en oposición a desestimación por academicidad*, planteando que el inmueble a ejecutarse no constituía la residencia principal de la apelante, y esto cambió el rumbo del proceso hasta ese momento seguido, en el que habíamos intervenido en dos ocasiones previas.[6] Como resultado, la señora Soto Pérez presentó una moción para rebatir, entre otros asuntos, la alegación del apelado en términos de que el inmueble hipotecado no era su residencia principal.

La controversia sobre si el inmueble dado en garantía constituía o no la residencial principal de la apelante fue resuelta en los méritos por el TPI en la *Sentencia* apelada. Tal cual ya detallamos, el foro apelado zanjó que la referida propiedad no era la residencia principal de la apelante, *ergo*, el proceso compulsorio de mediación requerido por la Ley Núm. 184-2012, *supra*, resultaba inaplicable. A partir de dicha decisión, el foro primario entendió que tenía jurisdicción para disponer finalmente de la reclamación instada por San Carlos Mortgage, según lo hizo.

Por causa de la amplia citación de la jurisprudencia que hiciéramos en la exposición de derecho sobre el requisito jurisdiccional de mediación compulsoria que manda la Ley Núm. 184-2012, *supra*, cuando un acreedor inicia un proceso de ejecución de hipoteca sobre una propiedad residencial que constituya una vivienda principal, resulta innecesaria su reproducción aquí. En cualquier caso, no hay duda de que la determinación sobre si la propiedad residencial es o no la vivienda principal de la apelante es una de umbral, pues incide sobre la jurisdicción del Tribunal, y prima sobre cualquier otro asunto planteado por las partes. *Las cuestiones jurisdiccionales son materia privilegiada y deben resolverse con preferencia a los demás asuntos. Mun. San Sebastián v. QMC Telecom*, supra, pág. 660. En consecuencia, habremos de abordar primero el asunto jurisdiccional señalado.

---

[6] Ver, KLAN202100862 y KLCE202200672.

Junto a lo hasta aquí dicho se debe considerar que estamos ante una *Sentencia* dictada sumariamente, sujeta a la Regla 36 de Procedimiento Civil, *supra,* lo que incluye la doctrina jurisprudencial de que su revisión por este Tribunal de Apelaciones acontece *de novo,* encontrándonos en idéntica posición que el foro apelado para la valoración de la prueba documental que obra en autos. Por esto, nos corresponde examinar la prueba documental incluida por las partes en la moción de sentencia sumaria, y su oposición, para determinar si la parte promovente logró establecer como un hecho incontrovertido que el inmueble no constituía la residencia principal de la apelante, o si tal hecho fue impugnado por la parte apelada. *Al determinar si existen controversias de hechos que impidan disponer del caso sumariamente, el tribunal analizará los documentos que acompañan la moción, los documentos incluidos con la moción en oposición y aquellos que obre en el expediente. El tribunal determinará si la parte que se opone a que se dicte sentencia sumaria controvirtió algún hecho material o si hay alegaciones que no ha sido refutadas de forma alguna. Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010).

Atendiendo primero la *Moción solicitando que se dicte sentencia sumaria* presentada por San Carlos Mortgage, en el inciso noveno de los *hechos que no están en controversia,* esta parte se dispuso a establecer como hecho incontrovertido que el inmueble a ser ejecutado no constituía la residencia principal de la apelante, para lo que hizo referencia a un documento previamente sometido a la atención del TPI, identificado como Anejo I de la Entrada Núm. 103 en SUMAC. Es decir, el apelado aludió a la declaración jurada que había acompañado junto a su *Moción informando retiro del proceso de mediación y en oposición a desestimación por academicidad,* como prueba documental que probaba el hecho propuesto. Tal declaración jurada fue la única prueba documental provista por la parte apelada para establecer dicho hecho medular, de modo que nos resulta esencial su consideración, veamos.

En la muy escueta declaración jurada mencionada, firmada por el señor Humberto Meléndez Medina, emplazador de San Carlos Mortgage, este se circunscribió a afirmar lo siguiente sobre la controversia relativa a si la propiedad constituye la residencial principal de la apelante:

> Que el día 22 de agosto de 2023, a las 8:22am, me personé a la Carr. 110 km 20.9 Bo. Aceitunas, Moca PR. la propiedad de dos niveles se encontraba en buen estado y aparentaba estar habitada, además tenía varias jaulas de gallo en la parte trasera, antes de marcharme **hable (sic) con la vecina de al frente mujer de aproximadamente 65-70 años, tez trigueña con pañuelo en la cabeza, confirmo (sic) que la propiedad de justo al frente es la casa de la Sarah Soto Pérez, pero que la demandada no la vive, que quien vive actualmente la casa es el hermano de la demandada**. (Énfasis y subrayados provistos). Anejo I de la Entrada Núm. 103 de SUMAC.

Según recalcamos en la exposición de derecho, la Regla 36.5 de Procedimiento Civil, 32 LPRA Ap. V, R.36.5, establece que: **"[l]as declaraciones juradas para sostener** u oponerse a la moción **se basarán <u>en el conocimiento personal del (de la) declarante</u>. Contendrán aquellos hechos que serían admisibles en evidencia** y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido". (Énfasis y subrayado provistos). 32 LPRA Ap. V, R.36.5. La declarón jurada para ser suficiente, *no solo debe contener hechos sobre los aspectos sustantivos del caso, sino que se deben incluir hechos que establezcan que el declarante tiene conocimiento personal del asunto declarado. Roldán Flores v. M. Cuebas*, supra, pág. 678.

Sin embargo, como resulta evidente de la lectura de la porción transcrita de la declaración jurada presentada por San Carlos Mortgage, este pretendió establecer como un hecho incontrovertido que el inmueble no era la residencia principal de la apelante, a través del contenido de una expresión hecha por un tercero, la referida *vecina,* (de quien ni siquiera se proveyó el nombre, ni dirección exacta), quien no fue la persona que suscribió la declaración jurada, pues la firmó el emplazador. En este sentido, la declaración de la *vecina* es claramente prueba de referencia que, ausente esta de testificar, sería inadmisible para probar la verdad de lo aseverado,

(que la apelante *no vive* el inmueble).[7]  Dicho de otro modo, al emplazador no le constaba de conocimiento personal que la apelante no residiera en el referido inmueble, sino que se valió de la expresión de un tercero, lo que le dijo *la vecina*, para tratar de probar tal presunto hecho, lo que constituye, reiteramos, un claro ejemplo de prueba de referencia inadmisible. Tampoco surge de la declaración jurada que el emplazador llevara a cabo alguna otra gestión para comprobar lo que le expresó la vecina, o investigar sobre datos conducentes a confirmar el presunto hecho del cual testificó la *vecina*.

En consecuencia, la parte promovente de la moción de sentencia sumaria falló en establecer con prueba admisible que el inmueble objeto de la garantía hipotecaria no era la residencia principal de la apelante.

Además, atendiendo la documentación incluida en la *Moción en oposición a sentencia sumaria y solicitando desestimación de la demanda* presentada por la señora Soto Pérez para controvertir la afirmación de que el inmueble no era su residencia, es de fijarse que esta acompañó una escritura pública, debidamente suscrita por notario público, y la propia apelante, denominada *Acta para anotar derecho a hogar seguro*, en cuyo expositivo primero se afirma que la adquirente (señora Soto Pérez) es dueña privativamente en pleno dominio y certifica **que es su residencia principal**. (Énfasis provisto). Anejo I de la Entrada Núm. 120 de SUMAC.

Es decir, aunque para fines *in argüende* se admitiera el contenido de la declaración jurada del emplazador de San Carlos Mortgage para probar la verdad de lo alegado, en el expediente del Tribunal obraba otra prueba documental, la referida la escritura pública, provista por la parte que se opuso a la moción de sentencia sumaria, que servía para impugnar tal hecho propuesto, al menos en el contexto cuando se evalúa a la luz de la Regla 36 de Procedimiento Civil, *supra*.

---

[7] La Regla 801(d) de Evidencia define la prueba de referencia como *una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece para probar la verdad de lo aseverado*. 32 LPRA Ap. VI, R. 801(d).

Con todo, lo anterior no dispone de esta controversia fáctica esencial, resultando pertinente la expresión de nuestro Tribunal Supremo a efectos de que ***los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos de los cuales surjan admisiones hechas por las partes, sean o no parte de la solicitud de sentencia sumaria***. (Énfasis en el original). *González Meléndez v. Mun. Autónomo de San Juan*, 212 DPR 601, 619 (2018).

En tal sentido, el foro *a quo* estaba habilitado, como lo hizo, para considerar las alegaciones que hiciera la apelante sobre la controversia bajo discusión, y otra información pertinente que surgiera de autos, (como la dirección que esta utilizaba en sus mociones al Tribunal). Escudriñada la *Sentencia* apelada, es evidente que estos asuntos pesaron de gran manera en la conciencia del juzgador al adjudicar como un hecho incontrovertido que el inmueble objeto de ejecución no era la residencia o vivienda principal de la apelante. Lo que el TPI denominó *admisiones* de la apelante están contenidas en la *Moción sobre mediación y solicitando desestimación de la demanda*, Entrada Núm. 108 de SUMAC, que presentó el 28 de septiembre de 2023, donde afirmó lo que sigue:

(a) Mi intención es cuando me retire vivir en mi residencia principal.

(b) Además, cuando voy a Moca algunos fines de semana para visitar mi familia la uso como residencia principal.

(c) He vivido alquilada en San Juan por mi trabajo en ASSMCA en Centro Médico.

(d) Ahora mismo por otras razones he tenido que mudarme con mi hijo en San Juan también cerca de mi trabajo.

(e) Tengo escritura de Hogar Seguro en la casa y no tengo otra residencia.

(f) Mi hermano necesitaba un sitio donde vivir y por eso le permití quedarse en los bajos de mi casa.

Ante tales expresiones de la apelante; ¿puede concluirse que el inmueble a ejecutarse no constituye su residencia o vivienda principal? Juzgamos que no.

Se ha de tomar en consideración que, al proveer la acepción de *residencia o vivienda principal*, el Tribunal Supremo indicó que esta equivale a *ese lugar preciado que usamos como techo, morada o guarida.*[8] *Franklin Credit v. George Reviello, supra*, pág. 567.

Tomando las solas expresiones de la apelante que citamos, se podría razonablemente deducir en este momento procesal[9], (esta no ha sido sometida a un examen directo y menos a un contrainterrogatorio), que el lugar *preciado* que usa como *morada* o *guarida* es el inmueble en ejecución, al manifestar que: *vive alquilada en San Juan*; residiendo allí con su hijo *por necesidad de su trabajo*; pero con el plan de *volver* a la que llama su *residencia principal,* según expresamente identificó en la escritura sobre hogar seguro. Parece querer transmitirnos la apelante que su estadía en San Juan es meramente transitoria, siendo el inmueble objeto del pleito su verdadero *lugar preciado*. Tampoco nos parece que la dirección en San Juan que surge del récord del Tribunal para la correspondencia de la apelante sirve para solventar, por sí sola, la controversia medular sobre la residencia principal, pues una posible explicación para ello resulta de la oración que precede, es decir, que reside en San Juan con carácter transitorio, por necesidad de trabajo.

Es de importancia distinguir que el cuadro descrito dista mucho de la situación fáctica que examinó el Tribunal Supremo en *Franklin Credit v.*

---

[8] Esta *definición* resulta limitada, *vis a vis* la discusión amplia que un tema como *domicilio, (*que puede resultar relacionado) ha provocado en la jurisprudencia previa. Ver, *SLG Sola-Maldonado v. Bengoa Becerra*, 182 DPR 675 (2011); *Prawl v. Lafita Delfín*, 100 DPR 35 (1971); *Fiddler v. Srio. de Hacienda*, 85 DPR 316 (1962); el voto particular disidente del Juez Asociado Estrella Martínez en *Rosario Rodríguez v. Roselló Nevárez*, 207 DPR 795 (2021); E. Vázquez Bote, *Concepto del domicilio en derecho puertorriqueño*, 61 Rev. Jur. UPR, 25.

[9] **En modo alguno estamos aquí determinando que el inmueble sea la residencia principal de la apelante**, pero apreciamos que, al valorar la prueba que tenía ante sí el TPI en esta etapa de los procesos, resultaba insatisfactoria para llegar a la conclusión de que este hecho estuviese incontrovertido. Tocará al TPI decidir esta controversia, después que permita el desfile de la prueba, documental y testifical, sobre el asunto.

*George Reviello, supra,* y derivó en que el alto Foro **no** reconociera como residencia principal el inmueble de la demandada que allí se pretendía ejecutar. A *contrario sensu* de la situación fáctica ante nosotros, en dicha Opinión la propia parte demandada tenía una escritura pública que identificaba el inmueble a ser ejecutado como un *second home*, estableciendo que lo utilizaba, precisamente, como su segunda residencia. Además, el emplazador del acreedor en dicho pleito presentó una declaración jurada en la cual aseveró que la demandada le indicó que residía en Estados Unidos, no le interesaba la propiedad a ser ejecutada, estaba desocupada hace años y residía en New Jersey. *Íd*, págs. 568.

A este punto debemos recordar que el Tribunal de Apelaciones *debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de sentencia sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor. Rosado Reyes v. Global Healthcare Group*, LLC., 205 DPR 796, 809 (2020). A su vez, visto que solo procede dictar sentencia sumaria *si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiera, acreditan la inexistencia de una controversia real y sustancial respecto a los hechos medulares, González Santiago v. Baxter Healthcare*, supra, pág. 290, juzgamos que la documentación que tuvo a su disposición el TPI, y que evaluamos *de novo*, no resulta suficiente para adjudicar si el inmueble a ser ejecutado es la residencia principal de la apelante.

En consecuencia, determinamos que continúa en controversia si el inmueble a cuya ejecución aspira el apelado es o no la residencia principal de la apelante, pues la prueba provista por las partes **no** resulta suficiente para llegar a una conclusión en favor de ninguna de estas. Por tanto, resulta de umbral celebrar una vista evidenciaria para dirimir tal hecho, en la que las partes tengan oportunidad de presentar la prueba pertinente que estimen sobre el asunto, y el foro primario pueda aquilatar la prueba testifical que

allí se desfile, junto a la documental. Reiteramos que, por sus consecuencias jurisdiccionales, ya explicadas, dirimir este asunto prima sobre cualquier otro.

b.

Dispuesto la anterior, nos resulta preciso abordar un segundo tema para facilitar la continuación y culminación de este caso, referente al descubrimiento de cierta prueba documental ordenada a San Carlos. En específico, la parte apelante sostiene que San Carlos Mortgage no ha reproducido la totalidad del historial de pagos, a pesar de nuestras órdenes al respecto.

Sobre lo anterior, en la *Sentencia* emitida bajo el alfanumérico KLAN202100862, un panel hermano ordenó a que la parte acreedora en ese momento, Oriental Bank, descubriera en favor de la señora Soto Pérez *la información completa sobre el historial de pagos,* con el propósito de que la última pudiera estar preparada para la vista de mediación[10]. Luego, en el KLCE202200672, ante la alegación de la parte apelada de que el acreedor, ya siendo San Carlos Mortgage en lugar de Oritental Bank, todavía no le había descubierto la totalidad del historial de pagos que le era necesaria para el proceso compulsorio de mediación, reconocimos que un panel hermano había ordenado que el primero proveyera la información completa sobre el referido historial de pagos. No obstante, también advertimos que, ante la alegación de San Carlos Mortgage a efectos de que no contaba con la información completa requerida, dicha parte podía recurrir al auxilio del TPI para ordenar a un tercero (acreedor anterior) su entrega.

Conforme a lo anterior, determinamos que, una vez San Carlos Mortgage demuestre a satisfacción del TPI haber realizado las debidas gestiones para producir el historial de pago en su totalidad, entonces el foro primario estará en posición de admitir la documentación disponible y pertinente a la alegada acreencia acumulada, desde el 1ro de enero de 2020.

---

[10] KLCE20210862, pág. 18.

Visto el recorrido procesal de este caso, entendemos que la resolución justa de la controversia requiere que proveamos la oportunidad para que San Carlos Morgage verdaderamente acredite al foro de instancia su presunta inhabilidad de producir el historial de pagos en su totalidad.

Al resolver lo anterior, resaltamos que la doctrina de la *ley del caso* guía la discreción del tribunal, pero no coarta su facultad de manejar las controversias ante su consideración. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 9 (2016). De esta forma, el foro puede ejercer su prerrogativa de alterar dictámenes que constituyen la ley del caso en situaciones excepcionales. Dicho de otro modo, si en un mismo pleito, cierto asunto vuelve ante la consideración del tribunal y, al revaluar el mismo, éste concluye que su determinación previa atenta contra la resolución justa de la controversia, el foro no viene obligado a aplicar la ley del caso. *Félix v. Las Haciendas*, 165 DPR 832, 844 (2005).

## IV. Parte dispositiva

Por los fundamentos expuestos, determinamos *Revocar* la *Sentencia* apelada. En consecuencia, ordenamos que el asunto se devuelva al Tribunal de Primera Instancia para que celebre una vista evidenciaria a los fines de determinar si el inmueble constituye o no la residencia principal de la señora Soto Pérez. Luego de ello, si resultare necesario, el mismo foro primario dará lugar a las consideraciones que aquí insertamos sobre el descubrimiento de prueba restante.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones